**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| MAXWELL ROULEAU<br><br>*Plaintiff,*<br><br>v.<br><br>MAINE SCHOOL SOLUTIONS, LLC and BECKET ACADEMY, INC.,<br><br>*Defendants.* | ) | Case No. 1:25-cv-00566-LEW |

**DECLARATION OF JOSHUA TURNER**

I, JOSHUA TURNER, being over the age of eighteen (18) and competent in all respects to testify, hereby declare and affirm that the following is true and correct:

1. The facts set forth in this Declaration are based on my personal knowledge.

2. I am a Clinician at Maine School Solutions. In that role, I (together with other Clinicians) provides mental health counseling, behavioral intervention, and case management integrated directly into MSS's educational environment for students.

3. Although I was not aware of this when it was sent, I have reviewed the email that Mr. Rouleau attached to his submission in the Maine Human Rights Commission, which he apparently sent to Maine Department of Education ("MDOE") employee Sarah Ferguson on October 31, 2024, attached as **Exhibit C to the Declaration of Brannen McGraw** at 3 (filed concurrently).

4. I understand that Mr. Rouleau also stated to DOE that "They have told us that we are mandated reporters but told us that our duty was only to report suspicions to the student's

clinician and explicitly told us not to call DHHS or CPS as we 'don't know the situation as well as the clinicians and CPS might already be involved.' There have been several things that I have taken to clinicians personally and I am unsure If calls were made." **Exhibit C to the Declaration of Brannen McGraw.**

5. I am also aware that Mr. Rouleau made similar allegations in his Maine Human Rights Commission claim, which I believe he may have repeated in his meetings with DOE and DHHS representatives, that I informed him "that DHHS was 'backed up' and a report would not help because it was likely that the student was already in their system." A copy of the allegation that he raised in his Maine Human Rights Commission Charge is attached hereto as **Exhibit 1, Rouleau MHRC Charge.**

6. In my capacity as a Clinician, it is possible that Mr. Rouleau may came to me with concerns about various students during his time at CMLC, which may have included concerns about the students' behavior in the classroom, possible things happening at home, etc. It is not uncommon for Behavioral Health Providers ("BHPs") who work at CMLC to approach me with these kinds of questions. However, I do not recall Mr. Rouleau ever coming to me and stating that a CPS report should/needed to be made about any particular student.

7. I never instructed Mr. Rouleau not to make a mandatory report. I would never use DHHS being too "backed up" or a child already being in the system as a reason to not make a mandated report. I find this allegation insulting to me on a personal and professional level.

8. Mr. Rouleau was also a mandated reporter while working at CMLC, and should have attended the same training that I received. According to that training, if an employee coordinates with me or any other administrator about making a CPS report, if he did not receive

written confirmation within 24 hours that a report was made, the obligation then falls on him to make that report.

9. While I understand that he claimed he was instructed to only tell a student's clinician about concerns and to not make reports himself. Granted, I am not present for every conversation BHPs have with supervisors, but I have been at Central Maine Learning Center for over 12 years and have never heard this said to any BHP or heard of any BHP claiming it was said to them. We have regular trainings to remind all staff at CMLC that we are all mandated reporters and to make a report if we feel one should be made.

10. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 09/17/2026

/s/ Joshua Turner
Joshua Turner
Clinician