**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| MAXWELL ROULEAU<br><br>*Plaintiff,*<br><br>v.<br><br>MAINE SCHOOL SOLUTIONS, LLC and BECKET ACADEMY, INC.,<br><br>*Defendants*. | ) | Case No. 1:25-cv-00566-LEW |

**DECLARATION OF KATELYNN FITZGERALD**

I, KATELYNN FITZGERALD, being over the age of eighteen (18) and competent in all respects to testify, hereby declare and affirm that the following is true and correct:

1. The facts set forth in this Declaration are based on my personal knowledge.

2. I have worked at Maine School Solutions ("MSS") for nearly 4 years, I have served as Human Resources Director. I was an administrator in a healthcare facility for eight years before joining MSS. In that role, I oversee employee pay and benefits programs, I facilitate development of employment policies and ensure that they comply with applicable laws, and I oversee implementation and training of organizational policies and practices that relate to employment policies, as opposed to programmatic policies.

3. When Max Rouleau was employed at Central Maine Learning Center ("CMLC"), I worked with his supervisors and others to discuss employment discipline and coaching that the school issued to Mr. Rouleau.

4. On October 19, the Owner, Brad Ulmer, reached out to me to ask me to meet with Mr. Rouleau regarding some concerns that Mr. Rouleau had relating to billing.

5. On October 22, 2024, I met with Mr. Rouleau. During this meeting, he raised concerns about his time entries and Maine School Solution's billing practices. Specifically, his concerns were that in the body of the notes section in various progress notes and incident reports, Mr. Rouleau had been recording exact start and stop times of certain events or interactions. He raised a concern that the times that were being entered on those notes, not within the body of the notes but on the portion used for billing, were being changed. Mr. Rouleau claimed he knew this because in the body of his notes, he would write down the times of certain events, and he claimed the times reported were different than his notes.

6. Mr. Rouleau had searched three or four weeks' worth of notes, and claimed that he identified one hour of time on those behavioral notes had been changed, identifying a specific student for whom he could name an example.

7. Following this meeting, I, along with A/R and A/P Administrator Ashley King, conducted an internal investigation into Mr. Rouleau's concerns. The investigation went beyond the weeks that Mr. Rouleau had identified. Rather than go through the notes that Mr. Rouleau gave us, we went through the entirety of his billing entries for August, September, and October 2024.

8. On October 30, 2024, after we completed the investigation, we met again with Mr. Rouleau. We told Mr. Rouleau in that meeting our findings. The investigation revealed no instances of intentional misbilling, billing fraud, or related misconduct. Rather, the investigation determined that out of the three months of time entries, we could only identify three (3) instances in which Mr. Rouleau had documented start or stop times in the body of the notes, which was changed.

9. We manually checked all of the time entries for every day that Mr. Rouleau worked for August, September, and October. Of those, we identified three (3) instances in which our Administrative Assistant, Adria Salois, our quality assurance ("QA") process, applied the rounding rule. When we examined those changes, we determined that all three related to time was properly adjusted according to MaineCare's billing standards. Specifically, because services are billed in 15-minute increments, Mr. Rouleau's start and stop times were adjusted appropriately consistent with those billing expectations. A copy of all three notes (redacted) that we identified in this meeting are attached as **Exhibit A.**

10. There was only one instance in our review in which we identified that Ms. Salois had applied the rounding rule incorrectly, but by coincidence, that progress note had not yet been billed to MaineCare because it had only occurred earlier that week. In that instance, dated October 15, 2024, the body of the notes indicate that the student's van (departure) arrived at 2:10 p.m. **Exhibit A,** at 1. The end time under "Activity Information" was changed to 2:15 p.m., which would have been acceptable under a prior version of the rule (which allowed the agency to "round up" if it was 7 minutes, or higher than 50% of the nearest increment).

11. In 2023, however, that MaineCare "rounding rule" had changed, and rounding up should have only occurred if the end time was 2:13p or later. Because this one instance showed that the time ended at 2:10 p.m., we determined that it should be rounded down to 2:00 p.m. Fortunately, because that note had only been created on October 15, we were able to catch that and it was not billed incorrectly.

12. During this meeting, I told Mr. Rouleau that the investigation did not reveal that Maine School Solutions engaged in fraudulent billing practices. I further explained that the time

discrepancies were the result of Maine School Solutions' compliance with the 15-minute increment standard required by MaineCare billing policy.

13. We informed Mr. Rouleau that these were immediately corrected, and the state was never billed for those incorrect entries.

14. Mr. Rouleau became upset and raised his voice when I explained our QA processes, exclaiming that his mother had done QA "for twenty years" and that he knew what the QA processes were. Mr. Rouleau insisted that whoever changed his time entries should be "persecuted" [*sic*] for "identity theft." As the meeting concluded, he remained very upset.

15. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 09/17/2026

/s/Katelynn Fitzgerald
Katelynn Fitzgerald
Human Resources Director